811 F.2d 498
 1988 A.M.C. 912, 6 Fed.R.Serv.3d 1350
 Amos HAMILTON, Plaintiff-Appellant,
v.
NEPTUNE ORIENT LINES, LTD., Interocean Steamship
Corporation, Does 1 through 50, inclusive,
Defendants-Appellees,
and
Crescent Wharf and Warehouse, Intervenor.
 No. 85-2149.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 2, 1986.
Decided Feb. 25, 1987.
 
 Frances Pinnock, San Francisco, Cal., for plaintiff-appellant.
 Robert A. Mehaffey, Jr., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED, KENNEDY and BEEZER, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 Amos Hamilton appeals from the dismissal of his suit against Neptune Orient Lines and Interocean Steamship Corporation for want of prosecution. We conclude that although dismissal pursuant to Federal Rule of Civil Procedure 41(b) is an appropriate means of ensuring the expeditious resolution of litigation, dismissal was improper in this case. We do so with some reluctance.
 
 
 2
 Hamilton alleged that he suffered a disabling injury while unloading a Neptune Orient Lines ship on September 15, 1980. The suit was filed by the firm of Weltin and Van Dam on September 13, 1982. For over a year, the parties engaged in discovery, with trial set for December 5, 1983. Delay in the resolution of a companion worker's compensation claim, however, forced postponement of the trial until April 22, 1985. A pretrial conference was set for April 12, ten days before the trial was to commence. Discovery continued until the pretrial conference, with one substantial delay occasioned by Weltin and Van Dam's failure to respond to a final set of interrogatories.
 
 
 3
 At the pretrial conference, it became apparent there was a rift in the relation between Hamilton and his attorneys. An attorney from Weltin and Van Dam informed the court that Hamilton wanted to change attorneys. Although there is confusion about the events following the conference, it appears that a substitution of attorneys form was prepared but never actually filed, and a continuance was discussed but never formally requested. On the first day of trial, an attorney from Weltin and Van Dam appeared with Hamilton and stated that Hamilton could not proceed until he obtained new counsel. The district judge, after explaining that the case was the twelfth oldest on the calendar and that an entire week had been set aside for trial, dismissed the case with prejudice.
 
 
 4
 A dismissal for want of prosecution will stand unless it is an abuse of discretion. Link v. Wabash R.R., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir.1976). In determining whether an abuse of discretion has occurred, a number of factors are relevant, including the plaintiff's diligence, the trial court's need to manage its docket, the danger of prejudice to the party suffering the delay, the availability of alternate sanctions, and the existence of warning to the party occasioning the delay. Franklin v. Murphy, 745 F.2d 1221, 1232 (9th Cir.1984); Ace Novelty Co. v. Gooding Amusement Co., 664 F.2d 761, 763 (9th Cir.1981).
 
 
 5
 In this case, it appears a lack of diligence on the part of Weltin and Van Dam played a substantial part in the disruption of the district court's docket. Over the course of almost three years of discovery, a series of attorneys from the firm failed to obtain essential documents relating to the accident, in part because they remained in only the most sporadic contact with their client. When problems in the attorney-client relation became acute, they failed to act promptly to clarify their status. Such behavior makes dismissal a realistic possibility. See Kung v. FOM Investment Corp., 563 F.2d 1316, 1318 (9th Cir.1977) (per curiam) (delay by attorneys merits dismissal).
 
 
 6
 Hamilton is not blameless. The breakdown in communications with Weltin and Van Dam was, at least in part, his responsibility. As we have emphasized before, "[t]he plaintiff cannot avoid ... dismissal by arguing that [he] is an innocent party who will be made to suffer for the errors of [his] attorney." Air West, 542 F.2d at 526. Regardless of where the blame should lie, we will not enter the business of resurrecting lawsuits gone astray because of ruptures in the attorney-client relation. See Myers v. Shekter (In re Hill), 775 F.2d 1385, 1387 (9th Cir.1985) (per curiam) (faults and defaults of attorney will be imputed to client).
 
 
 7
 Our concern with the conduct of attorney and client in this case is tempered by our consideration of other relevant factors, including warnings and alternative sanctions. On the record before us, we cannot say that clear warning was given. The order dismissing the case indicates that the district judge was primarily concerned with the time the case had been on the docket and the inconvenience of rescheduling his calendar. While these are legitimate concerns, they do not relieve the district judge of his obligation to warn the plaintiff that dismissal is imminent. Tolbert v. Leighton, 623 F.2d 585, 587 (9th Cir.1980).
 
 
 8
 Nor does a district judge's understandable pique excuse his failure to consider alternative sanctions. While there is no requirement that every conceivable sanction be examined, meaningful alternatives must be explored. Van Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F.2d 1047, 1054 (9th Cir.1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972). In this case, the district judge might have imposed Neptune's witness costs on Hamilton or Weltin and Van Dam to cure any prejudice Neptune may have suffered from the delay. Cf. Reizakis v. Loy, 490 F.2d 1132, 1135-36 (4th Cir.1974) (imposition of costs on attorneys responsible for delay permissible). Where there is no indication that such alternative sanctions were weighed and found wanting, a dismissal pursuant to Rule 41(b) is more difficult to sustain.
 
 
 9
 When attorney and client each put blame on the other for delays occasioned by one or both, some sanction is required, lest the court and the innocent parties become the victims of a collateral dispute. Any such sanction involves a further delay of its own. There is no cost-free solution, and the justice system is the loser. We stress, therefore, that we are prepared to support trial judges who impose substantial sanctions on a lawyer who contributes to a default, and we stand ready as well to affirm dismissal where a proper waming is left unheeded.
 
 
 10
 REVERSED.