## HAMILTON COPPER & STEEL COR- PORATION,

### Plaintiff/counter-defendant/Appellant,

v.

## PRIMARY STEEL, INC.,

### Defendant/counter-claimant/Appellee.

### Nos. 88–5834, 88–6021.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1989.

Decided March 23, 1990.

Robert E. Hinerfeld, Manatt, Phelps, Rothenberg & Phillips, Los Angeles, Cal., for plaintiff/counter-defendant/appellant.

John J. Lyons, Latham & Watkins, Los Angeles, Cal., for defendant/counter-claimant/appellee.

Before NORRIS, REINHARDT and TROTT, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

*Background*

Appellant Hamilton Copper & Steel Corp. ("Hamilton"), a steel pipe importer, alleged

---

that Primary Steel, Inc. ("Primary"), a steel pipe wholesaler, breached its "contract" by failing to pay for steel pipe that was sold and delivered to Primary. The district court held a bifurcated trial in which the first issue presented to the jury was whether the documents and correspondence between Hamilton and Primary constituted a contract. The district court instructed counsel out of the presence of the jury not to refer to the documents as a contract or agreement because that was an issue to be decided by the jury.

During two and one-half days of trial, counsel for Hamilton made 52 references to the documents and on nine occasions he referred to them as a contract. On several of these occasions, the court admonished counsel for using the words contract or agreement and instructed the jury that whether the documents constituted a contract was an issue for the jury to decide.

On the opening of the third day of trial, Hamilton moved for a mistrial and Primary did not oppose it. Hamilton gave as the basis for its motion the judge's instructions to the jury about what constituted a contract. In particular, Hamilton argued that the judge's examples of unenforceable contracts "could be terribly prejudicial and misleading in the minds of the jury." Reporter's Transcript ("R.T.") at 5 (Feb. 4, 1988). The court granted the mistrial motion, and then immediately, without notice, the court *sua sponte* dismissed the action *with prejudice* because of attorney misconduct during the course of the trial. Hamilton attempted to withdraw the mistrial motion, but without success. The question on appeal is whether the district court abused its discretion in dismissing the action with prejudice because of attorney misconduct.

## Discussion

District courts have "inherent power" to control their dockets. *Thompson v. Housing Authority,* 782 F.2d 829, 831 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). "In the exercise of that power they may impose sanctions including, where appropriate, ... dismissal of a case." *Id.* (citing *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Dismissal, however, is a harsh remedy and should only be imposed in "extreme circumstances." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir.1986).

Among the factors that our circuit has advised district courts to consider before resorting to the harsh sanction of dismissal, *see Thompson,* 782 F.2d at 831, the two that are decisive in this case are the availability of less drastic sanctions and the lack of prejudice to the defendant. We hold it was an abuse of discretion for the district court to dismiss this action without considering and trying less drastic alternatives particularly in the absence of prejudice to the defendant and other exceptional circumstances.

The district judge had several alternatives available to him, including warnings about possible dismissal if counsel persisted, but he did not use less drastic sanctions before resorting to dismissal with prejudice. Alternative sanctions available to the judge included: " 'a formal reprimand, ... a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, ... dismissal of the suit unless new counsel is secured[,] ... or the imposition of fees and costs upon plaintiff's counsel....' " *Malone v. United States Postal Service,* 833 F.2d 128, 132 n. 1 (9th Cir. 1987) (quoting *Titus v. Mercedes Benz of North America,* 695 F.2d 746, 749 n. 6 (3d Cir.1982)), *cert. denied sub nom. Malone v. Frank,* — U.S. ——, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).

Although the district judge admonished Hamilton's counsel for his use of the word "contract" and advised him not to use the word again, he never gave any warning that he was considering dismissal of the action with prejudice. At several points the judge reprimanded Hamilton's counsel in front of the jury:

The Court: Counsel, I have instructed you now at least four or five times not to use the word 'contracts.' I have explained to you that 'contracts' is a word of art and is the main issue that the jury has to decide. So in your questions do

not assume that your version of the documents is the contract. That's the essential question here. I again instruct you not to use the term 'contracts.'

Mr. Reisman: Very well, your Honor. I'm sorry.

The Court: How many times do I have to tell you? I have been very patient with you but I'm beginning to lose my patience. I direct you not to use that term any further.

R.T. at 89 (Feb. 3, 1988).

On the third day of trial, after Hamilton moved for a mistrial, the district judge delivered some very strong remarks from the bench, but fell short of warning counsel about the possibility of dismissal as a sanction:

I have practiced law and been a Judge for a total of 24 years.... I have tried a lot more trials than the 10 to 20 you have, but I have never—except with the exception of one local attorney ... seen an attorney that has repeatedly defied the Court the way you have in this matter.

R.T. at 12 (Feb. 4, 1988).

Finally, after the district judge announced his *sua sponte* dismissal of the action with prejudice, he at no time offered any explanation for his decision. He simply concluded that Hamilton's counsel "deliberately induced prejudicial error into the case by a deliberate tactic," *id.* at 14, and that he did so by "deliberately us[ing] repeatedly the term 'contract' to the jury, in front of the jury, against the Court's admonition, and [he] ha[s] created the very situation that [he] now use[s] as a basis for a mistrial." *Id.* Furthermore, the district judge found that Hamilton's counsel had engaged in "willful misconduct" and "the deliberate attempt to interfere with the orderly administration of justice and the integrity of this Court's orders." Excerpt of Record ("E.R.") at 103. The judge said that he had considered lesser sanctions but failed to say what they were or why he had rejected them. *Id.*

Our circuit has looked to the following questions in determining whether a district court has considered alternatives to dismissal:

(1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?

*Malone*, 833 F.2d at 132.

With these questions to guide us, we conclude from our review of the record that the district judge did not engage in an inquiry about alternative sanctions. We also conclude that this case does not fit into the narrow exception created by *Malone* which provides that in "egregious circumstances" such an inquiry may not be necessary. *Malone*, 833 F.2d at 132; *see United States for Use of Wiltec Guam, Inc. v. Kahaluu Construction Co.*, 857 F.2d 600, 604 (9th Cir.1988) ("the district court is generally required to discuss alternative sanctions; but in exceptional cases, where it is clear that no other alternative would have been reasonable, we may affirm a dismissal ... despite the absence of such a discussion"); *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 381 (9th Cir.1988) ("consideration of less severe penalties must be a reasonable explanation of possible and meaningful alternatives"). Without any elaboration, the district judge simply rejected the idea of less drastic sanctions: "The Court has considered the impact of dismissal versus lesser sanctions." E.R. at 103. He did not use alternative sanctions nor did he provide any notice to counsel that dismissal with prejudice was imminent. *See Malone*, 833 F.2d at 133 ("Failure to warn has frequently been a contributing factor in our decisions to reverse orders of dismissal.").

At most, the judge advised plaintiff's counsel on several occasions to refrain from using the word "contract" when examining witnesses.[1] He also gave the jury

1. During voir dire of the jurors, the judge used

the word "contract" to describe the issue that

curative instructions with the hope of undoing the harmful effect that he believed counsel's conduct had had on defendant's case. However, there is a large gap between these actions and dismissal with prejudice, and there is nothing in the judge's oral or written findings of fact to explain why he did not believe the curative instructions would be sufficient, why he did not try less severe sanctions, and why he did not warn plaintiff's counsel of the harsh action he intended to take.

The judge's failure to consider less severe sanctions, such as monetary sanctions, before resorting to the harsh sanction of dismissal must be weighed against any prejudice defendant might suffer by having to proceed with a second trial. The district judge found that "the prejudice to the defendant in retrying this matter after already having disclosed vital trial strategy and investing substantial time and effort was dramatic and not compensable by lesser sanctions." E.R. at 103. It is unclear, however, how defendant's trial strategy was unduly compromised. Hamilton argues that Primary had not even put on its case yet, while Primary contends that its cross-examination of Hamilton's expert witnesses was so damaging and caught Hamilton by such surprise that it would lose that advantage in a second trial. The district judge provides no reason for his conclusion that defendant would be "severely and irreparably damaged" by a second trial, *id.,* and the record offers no support for his conclusion. Moreover, Primary's failure to oppose Hamilton's mistrial motion undermines its claim that it would be irreparably harmed by a retrial.

We do not condone the conduct of Hamilton's counsel.[2] In the best light, counsel's

repeated use of the word "contract" was inadvertent; in the worst light, counsel was violating the judge's instruction in an attempt to cause a mistrial and have "two bites of the apple." In either case, however, a district court " 'abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions.' " *Malone,* 833 F.2d at 131 (quoting *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906, 912 (9th Cir. 1986)); *see also Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 500 (9th Cir.1987) ("Nor does a district judge's understandable pique excuse his failure to consider alternative sanctions.").

### Conclusion

The district judge should not have imposed the extreme sanction of dismissal without first considering and trying less drastic sanctions. He also should have given counsel notice of the extreme step he was contemplating. Having failed to take these steps, and having failed to show how defendant would be prejudiced by a second trial, the district judge abused his discretion in ordering dismissal with prejudice.

The judgment of dismissal with prejudice is VACATED and the action is REMANDED for further proceedings.

---

would be before the jurors; in opening statements, both counsel used the word "contract" to refer to the documents in question, and of course, at side bars, the use of the word "contract" was permissible. It was during examination of the witnesses that the judge took a firm stand that the word "contract" was not to be used. As he later explained to counsel: "In argument before the jury, of course, counsel can call it 'a contract'.... They can say anything they want in argument, but in questions before the jury, to continue to drum into their heads the very matter they have to decide in open

defiance of the Court's order, really passes my understanding." R.T. at 12 (Feb. 4, 1988).

2. It is of no avail for Hamilton to claim that it cannot be blamed for the conduct of its counsel. "We have repeatedly rejected such arguments." *Malone,* 833 F.2d at 134. However, we find nothing in the record to support Primary's contention that Hamilton's president, Joseph Konis, encouraged his counsel to conduct himself improperly.