**William MORRIS; Jeanne Morris, Plaintiffs–Appellants,**

v.

**MORGAN STANLEY & CO.; Randal Longfield, Defendants–Appellees.**

**Nos. 89–15727, 89–16129.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1990.

Decided Aug. 20, 1991.

As Amended Sept. 9, 1991.

*Smith,* —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

## 650

Robert E. Gyemant and Dennis A. Babbits, San Francisco, Cal., for plaintiffs-appellants.

Dale E. Barnes, Jr., McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants-appellees.

Before HUG, BEEZER and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

■ William and Jeanne Morris appeal from a July 1989 Order of the District Court for the Northern District of California dismissing their action for failure to prosecute under Federal Rule of Civil Procedure 41(b). We review a dismissal under Rule 41(b) for abuse of discretion. *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir.1988) (per curiam). Appellants also assert the district court was without jurisdiction to issue either the order dismissing their suit or a subsequent order clarifying the order dismissing the action. The existence of subject matter jurisdiction is a question of law we review de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We now affirm.

### FACTS

In April 1985 the Morrises filed a complaint against Morgan Stanley and Company ("Morgan") alleging violations of state and federal securities laws. They amended the complaint in May 1985. In July 1985 Morgan responded with a motion to compel arbitration[1] of certain of the state law claims, and to dismiss the remaining state and federal causes of action. The district court granted the motion in part, referring five state law counts to arbitration, dis-missing two remaining state law claims, and retaining jurisdiction over four federal counts. In November 1985 the parties entered into the discovery process. For twenty-one months, through August 1987, the federal claims proceeded towards trial.

There appears from the record early evidence Appellants did not intend to pursue this case to trial in a reasonably diligent manner. In May 1986 the district court set a discovery deadline of October 24, 1986, and a trial date in January 1987. The Morrises requested and Morgan stipulated to a continuance to February 1987 and April 1987 for discovery and trial. In March Appellants moved for a second continuance for the purpose of pursuing discovery and settlement, and in April 1987 they moved to reopen discovery. A hearing to consider these motions was scheduled for July 21, 1987.

Two weeks before the July hearing Appellants substituted counsel for the second time. At the hearing they requested extra time for discovery due to this latest substitution. The district court granted the continuance but cautioned against further delay.

In August 1987 the parties apparently agreed to dismiss, with prejudice, two federal claims, and to arbitrate the remaining two federal counts. The parties agreed they would enter into a stipulation and thereafter pursue the dispute to its conclusion through arbitration.[2] Matters did not proceed according to plan.

On August 11, 1987, Appellees mailed the first of several proposed stipulations to Appellants for their review and signature. Appellants refused to sign the stipulation, and requested the federal claims be consolidated with the state claims then pending arbitration before the National Association of Securities Dealers ("NASD"), and the entire matter be resolved by the American Arbitration Association ("AAA").

---

1. The Morrises and Morgan Stanley entered into an arbitration agreement as part of a standard brokerage contract.

2. There is no order staying or dismissing the four counts before the district court because there was no reason for the court to do so. The parties agreed privately to this new course and until they entered into some kind of stipulation, the court properly proceeded towards trial.

Morgan agreed to this new plan and on August 22 sent a new stipulation incorporating Appellants' demands. Appellees also withdrew the claims before the NASD which were scheduled for hearing in the fall of 1987. They received no response to the latest stipulation proposal.

On September 10, 1987, Appellees again wrote to Appellants to request action on the stipulation. Appellants returned an unsigned draft stipulation on September 22. Appellees signed the agreement and returned it to Appellants on September 30. Appellants did not respond. Appellees wrote to the plaintiffs on October 25 and 30 requesting action on the stipulation and received no response. In November 1987 Morgan wrote to Appellants requesting action on a discovery matter and were unanswered.

Beginning in June 1988, the parties engaged in a series of status conferences with the district court. During telephone conferences on June 21 and October 6, 1988, Appellants promised to send the arbitration stipulation and discovery materials but failed to do either. The parties agreed to meet on October 25 to discuss the arbitration and discovery matters, but Appellants did not appear at the meeting, did not call Appellees to provide an excuse, and did not answer a letter from Morgan requesting an explanation.

Status conferences three and four were held on December 8, 1988, and February 8, 1989. During these phone meetings Appellants said either that they would provide the long awaited stipulation, or had already done so. Appellees received nothing. On March 8, 1989, Morgan filed a motion to dismiss for failure to prosecute and in a fifth status conference the next day, informed the court and Appellants of its motion. Again, Appellants stated that they had sent the stipulation to Morgan and again, Morgan received nothing.

In April 1989, without the necessary stipulation having been signed by the parties, Appellants made a demand for arbitration to the AAA which included both state and federal claims. On May 19, 1990, the district court issued an order granting the motion to dismiss for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). The Morrises filed a notice of appeal on May 30. On May 24 Appellants sent a letter to the AAA stating that the court's order did not apply to the state law claims and thereafter the AAA informed Morgan that it intended to begin arbitration on those claims. On July 27, 1989, upon a motion by Morgan to clarify the May 19 order, the district court issued an order stating that it had intended to dismiss all of Appellants' claims with prejudice, and that the dismissal should render the case res judicata in any subsequent attempt to arbitrate any of the claims. The Morrises filed a notice of appeal from the clarifying order on August 25.

## I. DISCUSSION

Appellants assert the order dismissing the action pursuant to Rule 41(b) was improper; the district court had no jurisdiction to dismiss the state claims already submitted for arbitration; the court was without jurisdiction to dismiss the federal claims; and the court had no jurisdiction to issue the clarifying order. We address each of these assertions in turn.

### A.

██ Upon a motion to dismiss for failure to prosecute, a district court is required to weigh the following factors in arriving at a decision:

[1] the court's need to manage its docket, [2] the public interest in expeditious resolution of litigation, [3] the risk of prejudice to defendants from delay, [4] the policy favoring disposition of cases on their merits.

*Citizens Utilities Co. v. American Tel. & Tel. Co.*, 595 F.2d 1171, 1174 (9th Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979). We said in *Anderson v. Air West, Inc.*, 542 F.2d 522 (9th Cir. 1976): "[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Id.* at 524.

Finally, we said in *Anderson* that in the context of Rule 41(b) dismissals "[a] rule of thumb as to the meaning of the abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (quotation omitted).

■ In light of these factors and deference due the district court, we cannot say the court abused its discretion in dismissing Appellants' entire action with prejudice. The Morrises unnecessarily delayed the adjudication of the federal claims for almost two years: from the August 1987 agreement to arbitrate those claims to the time of Morgan's Rule 41(b) motion. Morgan voluntarily withdrew the state claims from NASD in August 1987 and might have had that part of the action resolved by the fall of 1987 had Appellants not requested the state and federal claims be consolidated and submitted to the AAA.

Appellants repeatedly failed to respond to correspondence from Appellees regarding discovery and the arbitration, failed to appear at at least one scheduled meeting, and misrepresented their intentions to the district court during five separate status conferences. As of the time of this appeal, the Morrises have substituted counsel four times which has resulted in serious delay.

■ Considering the extent of the delay by Appellants and the repeated attempts by the court and Appellees to move them into some kind of meaningful action, the court did not abuse its discretion in weighing the four factors described above. Although there is indeed a policy favoring disposition on the merits, it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics. Prejudice to Morgan here is obvious: it withdrew the claims before NASD that could have been resolved in 1987. And, we may presume from the length of time that has elapsed between the events at issue here and the present, that Appellees ability to present its case has been prejudiced. *Citizens,* 595 F.2d at 1174. Finally, this case has been in the federal courts for nearly five years for no reason other than inability or unwillingness on the part of Appellants to move the matter towards resolution.

■ Appellants present two additional arguments in support of their position that the district court abused its discretion. They argue an express warning regarding the possibility of dismissal is a prerequisite to a Rule 41(b) dismissal. This may be the case when dismissal is undertaken by the court, sua sponte, *Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 500 (9th Cir.1987), but there is no warning requirement when dismissal follows a noticed motion under Rule 41(b). *Nealy v. Transportation Maritima Mexicana, S.A.,* 662 F.2d 1275, 1279–81 (9th Cir.1980). And, although there is dispute between the parties whether the court actually warned Appellants it might dismiss the action, there is ample evidence, including discussions at five separate status conferences, that the court warned Appellants about their dilatory behavior.

■ The Morrises also assert the court could not dismiss the action without considering less drastic alternatives. In support of this position they cite cases which either do not involve Rule 41(b), or are instances of sua sponte dismissal. In a case Appellants do not cite, *Anderson v. Air West, Inc.,* 542 F.2d 522 (9th Cir.1976), we held that "[t]here is no requirement that every single alternate remedy be examined by the court before the sanction of dismissal is appropriate. The reasonable exploration of possible and meaningful alternatives is all that is required." *Id.* at 525. Because the parties discussed alternative remedies in their papers and because there is no requirement that the court make findings regarding alternatives, we find the court's consideration of less drastic sanctions was sufficient to withstand an abuse of discretion analysis.

## B.

Appellants next assert that under the Federal Arbitration Act, 9 U.S.C. § 3, once the district court issued an order compelling arbitration, the court was divested of jurisdiction to entertain and decide the Rule 41(b) motion to dismiss its state causes of action.[3] They argue that because these claims were properly stayed by the district court and were pending arbitration, the court was without jurisdiction to enter an order pursuant to Rule 41(b).

Appellants rely on *Thompson v. Zavin,* 607 F.Supp. 780 (C.D.Cal.1984). In that case, plaintiff asked the district court to order an arbitrator, after a § 3 stay was entered, to issue subpoenas compelling defendants to attend the arbitration, or in the alternative, to issue the subpoenas. The court of appeals rejected this request, holding that under § 3 it was without power to issue subpoenas or to take any other action impacting the conduct of the arbitration. The court said:

> Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration *'procedural'* questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.... Reservation of *'procedural'* issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.

*Id.* at 783 (emphasis added) (quoting *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964)). The court held § 3 requires a court to refrain from interfering in the conduct of an arbitration once there is a stay.

The *Thompson* rationale does not preclude jurisdiction in this case. The issue here was not arbitration procedure. Rather, the court was asked to dismiss the entire action because, after more than two years, it was clear plaintiffs had no intention of going forward with the arbitration in good faith. The question was not one of arbitration mechanics, but of the sanctity of the arbitral process itself. If plaintiffs could simply refuse to go forward and the district court was without power to influence that choice, the opportunity to undermine a valid agreement to arbitrate would be enormous.

It is most consistent with the goals of the Arbitration Act, along with federal policy favoring arbitration, to prevent courts from interfering with the conduct of arbitration, as *Thompson* holds, while at the same time permitting them to retain control over the case to the extent necessary to prevent a complete breakdown of the process.

Further support for this view is found in *The Anaconda v. American Sugar Co.,* 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1943). In that case, respondent filed suit against the owner of a barge, the Anaconda, and sought attachment of the vessel. The owner "excepted to the jurisdiction of the court" relying on an agreement between the parties to arbitrate disputes. *Id.* at 43, 64 S.Ct. at 864. The district court dismissed the action "on the ground that it was competent to the parties, while availing themselves of the provisions of the [Federal Arbitration Act] rendering arbitration agreements enforceable in courts of admiralty, to preclude resort to the usual process of seizure as security for compliance with any arbitral award." *Id.* at 43–44, 64 S.Ct. at 864.

The Supreme Court affirmed the decision of the appellate court reversing the district court dismissal. The Court held although § 3 requires a stay of the trial where a valid arbitration agreement is operative, "[t]he section obviously envisages *action in a court on a cause of action and does not oust the court's jurisdiction of the*

---

**3.** 9 U.S.C. § 3 (1988) states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*action, though the parties have agreed to arbitrate."* *Id.* at 44, 64 S.Ct. at 865 (emphasis added).

In so holding, the Court indicated its view that despite the stay, the trial court had jurisdiction to consider a matter that related not to the conduct of the arbitration, but rather to a matter outside the province of the arbitration (i.e., the ability of a party to preserve property in the event of a future judgment lien).

■ A Rule 41(b) motion, like the attachment action in *Anaconda,* is precisely the kind of issue that remains within the jurisdiction of the court. Appellees here did not seek district court interference with the process of arbitration, but rather sought a decision on a question regarding their rights as federal court litigants. The question of a Rule 41(b) dismissal, like that of an attachment, is wholly outside the scope of the arbitration process and is, fundamentally, an issue within proper federal jurisdiction.

Finally, in *Miller v. Aaacon Auto Transport, Inc.,* 545 F.2d 1019 (5th Cir.1977), a district court vacated a stay entered pursuant to § 3 of the Federal Arbitration Act. Defendant, who had requested the stay and sought review of the vacating order, argued once the district court issued the § 3 stay, it was without jurisdiction to vacate the stay.

The court of appeals, viewing the § 3 stay as an injunction, stated "[a]n injunction may be modified or dissolved in the discretion of the court when conditions have so changed that it is no longer needed or is rendered inequitable." *Id.* at 1020. It continued: "Accordingly, cases have held vacation of a stay proper where the ... parties had not concluded the proceedings within the time specified by the court." *Id.*

Although the district court in this case did not specify a specific time for conclusion of the arbitration, an inescapable inference from its Rule 41(b) dismissal is the court's conclusion that conditions had changed. The § 3 stay here was misused by Appellants for the purpose of delay, and thus no longer was a valid avenue for resolution of the state claims. In light of the seriousness of Appellants' intransigence, we cannot say it was outside the jurisdiction of the district court to dismiss these claims under Rule 41(b).

### C.

Appellants also assert that because the parties agreed to arbitrate the *federal* claims and because the court was informed of this agreement, the court had no jurisdiction to dismiss these claims under Rule 41(b). Because there was no stay issued submitting the federal issues to arbitration, the court could not possibly have been divested of jurisdiction. For that reason it was within the court's jurisdiction to dismiss the federal causes of action.

### D.

■ Finally, Appellants assert the district court was without jurisdiction to issue its clarifying order of July 27, 1989, because plaintiffs already had filed a notice of appeal and the appeal had been docketed. They correctly argue as a general rule, a district court is divested of jurisdiction once a notice of appeal has been filed. *Smith v. Lujan,* 588 F.2d 1304, 1307 (9th Cir.1979).

We have held, however, when a district court attempts to correct a "clerical error" under Federal Rule of Civil Procedure 60(a) after a notice of appeal has been filed, and the correction does not represent a change of position, but rather simply clarifies the court's intended action, "a remand to effectuate that intent is a matter of 'mere form.'" *Huey v. Teledyne,* 608 F.2d 1234, 1237 (9th Cir.1979); *see also Blanton v. Anzalone,* 813 F.2d 1574, 1577 (9th Cir. 1987) ("In deciding whether a trial court may alter a judgment pursuant to Fed. R.Civ.P. 60(a), our circuit focuses on what the court originally intended to do."); *Doyle v. United States,* 721 F.2d 1195, 1197 (9th Cir.1983) (the purpose of the rule divesting the district court of jurisdiction "is to avoid the confusion and inefficiency of two courts considering the same issues simultaneously). Courts should not employ

the rule to defeat this purpose by 'inducing needless paper shuffling.' " *Id.* (quoting 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11, at 3–44 n. 1 (2d ed.1983)).

We hold that the district court could permissibly clarify its original order pursuant to Rule 60(a) despite the notice of appeal. The original order was clear on its face: "IT IS ORDERED, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, that this action be, and hereby is, dismissed with prejudice for want of prosecution." Nevertheless, Appellants interpreted this order as dismissing only the federal causes of action, and informed the AAA of its position. The AAA apparently agreed with this view and informed Morgan of its intent to go forward.

In response, Appellees asked the court to clarify the intent of its original order and the court issued its clarifying order dismissing Appellants' entire cause of action, with prejudice. From the clarifying order it is obvious the district court intended to dismiss both the state and federal claims and that its first order simply was inartfully drafted. We therefore hold that despite the filing of the notice of appeal, the district court could clarify the original order under Rule 60(a).

AFFIRMED.