**Elpidio OLIVA, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary, Defendant–Appellee.**

No. 89–15619.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1992.

Decided March 3, 1992.

Brenton Rogozen, Legal Aid Society of
Santa Clara County, San Jose, Cal., for
plaintiff-appellant.

George C. Stoll, Asst. U.S. Atty., San
Francisco, Cal., for defendant-appellee.

Before SNEED, SCHROEDER and T.G.
NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Elpidio Oliva appeals the district court's
*sua sponte* dismissal of his action appeal-
ing the Secretary of Health and Human
Services' determination of his disability on-
set date. We reverse, although we do so
with some reluctance in view of Oliva's
counsel's dilatory conduct in this case.

Oliva filed this action in district court on
October 7, 1986. On that date, the court
issued a Procedural Order for Social Secur-
ity Review Actions ("procedural order"),
which required Oliva to file a motion for
summary judgment within thirty days of
service of the Secretary's answer. On
April 3, 1987, Oliva applied for relief from
the procedural order, indicating additional
causes of action and class action status
would be alleged. On April 7, 1987, the
court modified the procedural order as fol-
lows: "Plaintiffs shall have thirty (30) days
to file a stipulation regarding an amended
complaint." Oliva filed an amended com-
plaint on May 22, 1987. The Secretary
filed an answer to the amended complaint
on July 6, 1987. Over a year and a half
later, when no action had been taken on
Oliva's case, the district court issued an
order dismissing the action. The district
court stated as its reason for dismissal that
pursuant to local rules and order of the
court, Oliva should have filed a motion for
summary judgment by August 6, 1987, and
that no action had been taken on the case
since July 6, 1987.

The court filed an order dismissing the
action on February 27, 1989. Oliva filed a
motion for relief from the order pursuant
to Rule 60(b), Fed.R.Civ.P., which the court
denied by order dated March 21, 1989. On
that same date, the court entered a judg-
ment of dismissal, "[i]n accordance with
the Court Order filed February 27, 1989."
Oliva's notice of appeal, filed within 60
days of the March 21 judgment, states he
appeals "from the judgment of dismissal
rendered by the Court on March 21, 1989."

The Secretary argues that Oliva's appeal
is solely from the denial of Oliva's Rule
60(b) motion, and not from the underlying
dismissal. We disagree. Oliva filed a
timely notice of appeal from the March 21
judgment, which is based on the February
27 order of dismissal. Therefore, our re-
view is of the dismissal of the action, not of
the decision on the 60(b) motion. *Compare
Floyd v. Laws*, 929 F.2d 1390, 1400 (9th
Cir.1991) (appeal of court's denial of Rule
60(b) motion does not bring up the underly-
ing judgment for review).

District courts have inherent pow-
er to control their dockets and may impose
sanctions, including dismissal, in the exer-
cise of that discretion. *Hamilton Copper
& Steel Corp. v. Primary Steel, Inc.*, 898
F.2d 1428, 1429 (9th Cir.1990) (citations
omitted). Because dismissal is a harsh pen-
alty, it should be imposed as a sanction
only in extreme circumstances. *Thompson
v. Housing Authority*, 782 F.2d 829, 831

(9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). The district court's *sua sponte* dismissal of this case for failure to prosecute is reviewed for abuse of discretion. *Id.* at 832.

■ Of the factors that our circuit has advised district courts to consider before resorting to the penalty of dismissal, *see Thompson,* 782 F.2d at 831, *Hamilton Copper & Steel Corp.,* 898 F.2d at 1430, the two that are decisive in this case are the failure to consider less drastic alternatives and the lack of warning of imminent dismissal of the case. In cases involving *sua sponte* dismissal of an action, rather than dismissal following a noticed motion under Rule 41(b), Fed.R.Civ.P., there is a closer focus on these two considerations. *See Hamilton Copper & Steel Corp.,* 898 F.2d 1428; *see also Morris v. Morgan Stanley & Co.,* 942 F.2d 648, 652 (9th Cir. 1991). Where, as here, the district court does not explicitly consider these factors, we independently review the record to determine whether the order of dismissal was an abuse of discretion. *Malone v. United States Postal Serv.,* 833 F.2d 128, 130 (9th Cir.1987), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).

■ The record before us does not reveal that the district court considered sanctions less drastic than dismissal. A district court "abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906, 912 (9th Cir.1986) (as quoted in both *Hamilton Copper & Steel Corp.* and *Malone* ). While explicit discussion of alternative sanctions is not always necessary, *see Malone,* 833 F.2d at 131–133, this case does not present the egregious circumstances, or the court's use of less drastic measures prior to dismissal, that obviate the need for explicit discussion of alternatives. *Id.; see also Hamilton Copper & Steel Corp.,* 898 F.2d at 1430 (collecting cases).

■ The failure to consider "less drastic alternatives" is compounded in this case by the lack of warning to Oliva's counsel of the imminent dismissal of the case. The district judge has an obligation to warn the plaintiff that dismissal is imminent. *Johnson v. United States Dept. of the Treasury,* 939 F.2d 820, 825 (9th Cir.1991); *Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 500 (9th Cir.1987); *Franklin v. Murphy,* 745 F.2d 1221, 1232 (9th Cir. 1984). Nothing in the record demonstrates that counsel was on notice that the case would be dismissed. "Failure to warn has frequently been a contributing factor in our decisions to reverse orders of dismissal." *Malone,* 833 F.2d at 133.

Here, the public's interest in expeditious resolution of litigation, the court's need to manage its docket, and the possible prejudice to the party suffering delay all support the district court's order of dismissal. We do not condone the dilatory conduct of Oliva's counsel. However, in the absence of indications that alternative sanctions were considered and of warning to counsel that dismissal was imminent, we cannot uphold the district court's *sua sponte* dismissal of this case. *See Johnson,* 939 F.2d at 825; *Hamilton Copper & Steel Corp.,* 898 F.2d at 1430–31; *Thompson,* 782 F.2d at 831–32; *Franklin,* 745 F.2d at 1232–34; *see also Morris,* 942 F.2d at 652; *Malone,* 833 F.2d at 131–133; *Hamilton,* 811 F.2d at 500. Moreover, the public policy favoring disposition on the merits weighs against dismissal. *Porter v. Martinez,* 941 F.2d 732, 734 (9th Cir.1991); *Malone,* 833 F.2d at 130.

REVERSED and REMANDED.

SNEED, Senior Circuit Judge, dissenting:

I do not agree that the district court abused its discretion in dismissing this case for lack of prosecution. The court, in holding to the contrary, rested its decision exclusively on two factors.

These two are the requirement that the district court explicitly place on the record the fact that it did consider less drastic alternatives and did warn the plaintiff's counsel that dismissal was imminent. These two requirements are not in all in-

stances treated as requirements but in some cases are treated as factors in a five factor balancing test. Each factor does not have to be present before a district court may dismiss a case for failure to prosecute. For example, in *Henderson v. Duncan*, 779 F.2d 1421, 1425 (9th Cir.1986), the court applied the balancing test but refused to require one of the factors. The court held: "We cannot find that a lack of prejudice to defendants is determinative."

Similarly, in *Malone v. United States Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987), *cert. denied*, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988), the court affirmed dismissal although the district court failed to consider less drastic sanctions. The court stated: "We have never held that explicit discussion of alternatives is *necessary* for an order of dismissal to be upheld." Therefore, according to *Malone*, a district court is never required to discuss alternatives to dismissal.

To transform the balancing test into a set of rigid requirements diminishes a district court's discretion. The district courts are in a superior position to supervise litigants' conduct and to issue appropriate sanctions. *See Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th Cir.1981). For this reason, the court has repeatedly given deference to district courts, which are best suited to determine when delay in a particular case interferes with docket management and the public interest. *Henderson*, 779 F.2d at 1423; *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir.1984), *cert. denied* 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985).

By elevating two "factors" to "requirements," the court is placing on the shoulders of the district courts an obligation to police the performance of the attorney of the party whose claim is subject to dismissal. That attorney, not the court, should bear the burden of properly performing his duty to his client. The district court should not be compelled to serve as a safety net to protect the client from his attorney. It is true that lawyers are busy and sometimes lose track of the time at which they should act on behalf of a client. District courts are, also, very busy and, even under the view of the majority, are only "secondarily liable" to the party-client. There is little reason to make them nursemaids of lawyers who, as in this case, neglect a client's case from July 6, 1987 to February 27, 1989. Even then the attorney in this case was only aroused from his slumber by the court's dismissal of his client's cause of action. Was the court precipitous? Must the court have gently touched the nodding lawyer and whispered that he should wake up or his case might be gone before making it vanish from the court's backlog? I think not.

The two factors, now "requirements," appropriately could function as such had the dismissal been attempted between September 1, 1987, and January 1, 1988, or even March 1, 1988. However, as the neglect approaches a year in duration, they should be deemed "factors" only. This would serve to prevent peremptory and arbitrary dismissal without forcing the district court to assume responsibilities of the attorney.

Judges understandably sympathize with both lawyers, for they are of that profession, and clients, for they have served them. However, their primary responsibility is to the court and the people. An inescapable part of that responsibility is to secure justice *expeditiously*. That duty should not be sacrificed, neglected, or impaired by inordinate tolerance of sloppy legal practices or by sympathy for clients abandoned by attorneys who so practice. Those attorneys should be made accountable for their wrongs. Loose rules induce loose practices which, in turn, cause delays and increase the costs of justice.

I would hold that the district court did not abuse its discretion in dismissing the appellant's claim.