86 F.3d 1161
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BILBUD RANCHO CALIFORNIA LTD., a California limited
partnership; Billy J. Dendy; Edward W.
Barksdale, Plaintiffs-Appellants,
v.
JOHNSON & JOHNSON DEVELOPMENT CORPORATION; William P.
Johnson; Dean Allen; John Augustine; Brian Wieck; Rancho
California City Associates IIA; Patricia D. Johnson;
Donald W. Callender, individually and as trustee of the
Donald W. Callender Family Trust; Omni Restaurant
Consulting Corp.; Bruce V. Baumann & Paul G. Baumann
Partnership; Bruce V. Bauman, individually and as trustee
for the VB & P Baumann, Inc. Money Purchase Pension Plan;
Robert G. Thompson, individually and as trustee UTA June 9,
1992; Rancho California Industrial Complex I, Defendants-Appellees.
 No. 94-55709.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1995.
Decided May 17, 1996.
 
 Before: HUG, Chief Judge, and BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Bilbud Rancho California Limited, Billy J. Dendy, and Edward W. Barksdale (collectively "Bilbud"), appeal from an order granting a motion to dismiss filed by Appellee Donald W. Callender, individually and as trustee of the Donald W. Callender Family Trust and Omni Restaurant Consulting Corporation ("the Callender Group"). After filing their initial complaint, and following the Callender Group's filing of a motion to dismiss, Bilbud's counsel withdrew from the case due to a conflict of interest. Successor counsel, indicating that they planned to amend the complaint, requested a continuance of the hearing on Defendant's motions and the parties entered into a stipulation setting a date for the filing and serving of either an opposition to Callender's motion to dismiss or an amended complaint.
 
 
 3
 After plaintiffs missed the deadline to file an amended complaint or opposition to the motion to dismiss as set out in the stipulation, the district court rejected the plaintiff's first amended complaint, and dismissed the action with prejudice. The court did so pursuant to Local Rule 7.1(f)(3)(c) of the United States District Court for the Southern District of California, stating that, "[f]ailure to file opposition papers by a stipulated deadline may be deemed to constitute consent by the defaulting parties to the granting of the motion." Bilbud appealed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 
 4
 Federal Rule of Civil Procedure 15(a) provides that a complaint may be amended once "as a matter of course at any time before a responsive pleading is served." A motion to dismiss is not a responsive pleading within the meaning of Rule 15(a). St. Michael's Convalescent Hosp. v. California, 643 F.2d 1369, 1374 (9th Cir.1981). Local Rule 7.1(f)(3)(c) provides that failure to file an opposition to a motion, "may constitute consent to the granting of that motion." Where, as here, application of the Local Rule deprives a plaintiff of its "right" to file an amended complaint, see Russell v. Landrieu, 621 F.2d 1037, 1042 (9th Cir.1980), the local rule conflicts with the federal rule.
 
 
 5
 Federal Rule of Civil Procedure 83 authorizes district courts to make rules governing their own practices so long as they are "not inconsistent with [the Federal Rules]." Where a conflict arises between the two, federal rules must prevail. Colgrove v. Battin, 413 U.S. 149, 161 n. 18 (1973). District courts are given wide discretion to apply local rules and "[o]nly in rare cases will we question the exercise of discretion in connection with the application of local rules." United States v. Warren, 601 F.2d 471, 474 (9th Cir.1979). This case, however, presents one of those rare instances in which the district court abused its discretion in applying a local rule.
 
 
 6
 The Callender Group rely upon the district court's contention that Bilbud, by agreeing to a stipulated deadline, waived its "right" to amend as conferred by Rule 15(a), and bound itself to Local Rule 7.1(f)(3)(c). We disagree. The stipulation nowhere indicates that the case would be dismissed if the June 20 deadline was not met. Without notice that such conduct would result in its case being dismissed with prejudice, Bilbud cannot be said to have known that failure to meet the terms of the stipulation would be fatal to its case. Appellees argue that a local rule similar to Rule 7.1(f)(3)(c) was upheld by this court in Warren, 601 F.2d at 473. However, in that case, the appellant failed to respond to over forty motions, a motion to dismiss, and a letter detailing the consequences of such failures under the local rule. Id. The appellant in Warren thus not only had notice, but also acted far more egregiously than Bilbud.
 
 
 7
 While the use of Local Rule 7.1(f)(3)(c) to dismiss their action was impermissible, Bilbud's non-compliance with the stipulated deadline may nonetheless have justified a sanction under Federal Rule of Civil Procedure 41(b). Dismissal with prejudice for similar violations have been held by this court to be abuses of discretion. See Udom v. Fonseca, 846 F.2d 1236, 1238 (9th Cir.1988) (district court erred in dismissing the case with prejudice when plaintiff failed to file an amended complaint within time allotted); see also Hamilton v. Neptune Orient Lines, Ltd., 811 F.2d 498, 500 (9th Cir.1987) (reversing a 41(b) dismissal as too harsh a sanction where "meaningful alternative" sanctions were never explored.)
 
 
 8
 Bilbud's agreement to the stipulation reflected at most a strategic hesitation on the part of its successor counsel. It reflected neither consent to have its case dismissed under the local rule, nor conduct so egregious as to warrant dismissal with prejudice under Federal Rule of Civil Procedure 41(b).
 
 
 9
 REVERSED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 10
 I respectfully dissent.
 
 
 11
 The parties stipulated to a date for Bilbud to fish or cut bait. The judge issued an order in accord with the stipulation. Bilbud, with its eyes open, let the fish or cut bait date come and go without action. We should affirm the district judge's exercise of discretion. It was fair and in accord with the parties' commitments. A district judge needs and has the authority to manage his docket by imposing cutoffs for pleadings amendments and oppositions to motions, and we erroneously undermine that authority by our disposition.
 
 
 12
 The stipulation, and ultimately the dismissal, flowed from a June 7, 1993, motion by one of the defendants to dismiss for failure to state a claim and for more definite statement. The motion was scheduled to be heard by Judge Thompson on July 19, 1993.
 
 
 13
 But during the time the motion would have to be opposed, or the complaint amended, Bilbud changed lawyers. On July 1, Bilbud's new lawyer asked the moving defendant's lawyer for a stipulation to a continuance. The defendant's lawyer agreed, but conditioned his agreement to the extension on a stipulation to a fish or cut bait date of July 20, to file either an opposition to the motions or an amended complaint. On July 8, the judge signed a Stipulation and Order pursuant to that agreement making it mandatory for Bilbud either to oppose the motions or file an amended complaint by July 20:
 
 
 14
 Now, Therefore, the parties hereto stipulate and agree as follows:
 
 
 15
 1. That hearing upon the Callender Group's motions shall be continued from July 19, 1993 at 10:00 a.m. in Courtroom No. One to August 30, 1993 at 10:30 a.m. to be heard with certain other motions then scheduled for hearing in this matter.
 
 
 16
 2. That plaintiffs shall, on or before July 20, 1993 file and serve either (1) a first amended complaint or (2) the requisite pleadings or opposition to the motions of the Callender Group.
 
 
 17
 3. Nothing herein limits or prejudices the rights and remedies of the Callender Group with regard to their pending motions or such other motions that may be filed.
 
 
 18
 Bilbud did not file anything by July 20. In many district courts, the clerk would have brought the file into the judge July 21, and the judge, if he happened to be available, would have signed an order dismissing the case at that time. That is how dockets are cleared of cases lawyers or their clients have chosen not to pursue. Such dismissals are not sanctions for misconduct. A fish or cut bait date creates an election not to pursue a case, which may be exercised for good reasons by conscientious lawyers and clients.
 
 
 19
 Nothing happened after July 20, and the case remained on the docket. The defendant therefore filed on August 9, a motion to dismiss and "Notice of No Opposition by Responding Parties," letting the court know that the fish or cut bait date had passed without action. The motion and notice were also served on Bilbud's attorney. This time, on August 19, Bilbud filed an amended complaint. The judge, after a hearing, dismissed the case with prejudice pursuant to S.D.Cal.Rule 7.1(f)(3)(c), which provides that failure to file opposition papers may constitute consent to the granting of the motion. Defendants Thompson and Baumann also joined in Bilbud's August 9 motion to dismiss.
 
 
 20
 Bilbud's attorney's declaration did not show mistake, inadvertence, or any other excuse for letting the fish or cut bait date pass without action. Instead, he said he did it with his eyes open, because he wanted more time and thought the date could not be enforced:
 
 
 21
 8. Initial analysis led your declarant to conclude that, in part, the motions to dismiss were well taken. Accordingly, rather than devote substantial resources to opposing the motions to dismiss--and consequent delay regarding the forward progress of the action--the decision was made to amend the complaint. The goal was and is to compile a complaint focusing upon primary causes, eliminating extraneous or duplicative allegations and causes of action, and gaining a grasp of a complex fact pattern extending over a lengthy period of time.
 
 
 22
 9. As July 20, 1993 arrived, it was apparent that proper preparation of the amended complaint would require significant additional time for research, fact gathering, obtaining further documents, and investigative tasks such as litigation searches and damage analysis.
 
 
 23
 10. Given the obligation as well as the desire to prepare an amended complaint as accurately as possible and consistent with the responsibilities of counsel and litigants under the Federal Rules of Civil Procedure, the decision was made by your declarant not to file an amended complaint until the preliminaries had been completed.
 
 
 24
 11. In making the decision not to file the amended complaint until everything was "right", the following was taken into account:
 
 
 25
 (a) The July 8, 1993 stipulation did not contain any penalty or other negative provision for missing the July 20, 1993 deadline. Its purpose was to organize all pending initial motions for hearing at the same time;
 
 
 26
 (b) The July 20, 1993 deadline had no effect on Plaintiffs' right to freely file an amended complaint in the absence of a responsive pleading as provided for in Rule 15(a) of the Federal Rules of Civil Procedure.
 
 
 27
 (c) Counsel for the Callender Group had never said, and your declarant had never agreed, that failure to meet the July 20 1993 deadline would constitute a consent to dismiss the Callender Group with prejudice.
 
 
 28
 This insouciant declaration begs the question of why, if he needed more time, Bilbud's lawyer did not ask for it, either by requesting a stipulation from the defendant's lawyer, or by moving for it.
 
 
 29
 The district judge reasoned that Bilbud had impliedly consented to dismissal by not filing anything by the fish or cut bait date:
 
 
 30
 Here, plaintiffs voluntarily and knowingly entered into the stipulation, negotiated the deadline, and formalized this deadline in a court order. Plaintiffs failed to meet this deadline and were, or should have been, aware of the potential consequences of their failure to adhere to the court order
 
 
 31
 The fact that plaintiffs agreed to the deadline and missed it shows implied consent, regardless of the fact that plaintiffs again named the Callender group in its Amended Complaint. Plaintiffs had agreed to file either an amended complaint or an opposition by the agreed upon deadline, and failed to do either. Therefore, the Callender group's motion to dismiss is granted and all claims against the Callender group are dismissed with prejudice.
 
 
 32
 The phrase "at any time" in Federal Rule of Civil Procedure 15(a) has to mean "at any time consistent with these rules, valid orders, and local rules consistent with these rules." Otherwise it would be absurd. An amended complaint could be filed after judgment, if the majority's construction were correct. District judges commonly issue pretrial orders pursuant to Federal Rule of Civil Procedure 16 imposing deadlines, so that the action quits being protean and assumes a form capable of adjudication. By the majority's analysis, such orders cannot control when the complaint is amended, because of the "at any time" language in Rule 15(a). But that cannot be so. Rule 16(b)(1) expressly authorizes the court to limit the time "to amend the pleadings." The district court's fish or cut bait date for amending the pleadings was authorized by this rule. The order the judge entered pursuant to the stipulation should be regarded as a routine trial management order, authorized, if the stipulation were not enough, by Rule 16.
 
 
 33
 Likewise, district courts have the power to set up procedures for handling motions. Federal Rule of Civil Procedure 78 gives district courts and individual judges broad power to adopt rules for determination of motions. We have previously approved of another district court local rule similar to S.D.Cal.Rule 7.1(f)(3)(c). See U.S. v. Warren, 601 F.2d 471 (9th Cir.1979). We said that a rule treating failure to file timely opposition as consent to a motion was valid, even in the context of a criminal case. Most district courts use such procedures, so that they can clear unopposed motions from the docket efficiently. Lawyers use the rules too, treating them as election dates. For example, a lawyer with a difficult client may tell opposing counsel, "I can't stipulate to the reasonable accommodation you want because my hardhead client told me 'no stipulations,' but just file a motion and I won't oppose it." That is how appropriate courtesies and civilities, such as reasonable extensions of time, get accomplished when the lawyers are ladies and gentlemen, even if their clients are not.
 
 
 34
 Our disposition operates on a theory which deprives the district court of the authority traditionally exercised, pursuant to these express authorizations by rule, to impose cutoffs for amendments and act summarily on unopposed motions.
 
 
 35
 Local Rule 7.1(f)(3)(c) does not conflict with FRCP 15(a) as applied in this case. Rule 15 has to be construed as consistent with Rule 78 and 16(b). Warren controls. The majority's distinction of Warren strikes me as mistaken. The egregiousness of the violator's conduct matters if the conduct is being punished as a sanction, but the implied consent rule is not a sanctions rule. A party often does not file an opposition to a motion because the party elects not to oppose the motion. The implied consent rule saves his client the fee for the quarter hour or so a nonopposition might require. When the court then grants the motion, it is not sanctioning the party which did not oppose it. The court is simply acting on what its local rule made implied consent, and all the lawyers in the district know is implied consent.
 
 
 36
 Bilbud's strongest case is Udom v. Fonseca, 846 F.2d 1236 (9th Cir.1988). That case should be distinguished on two grounds. First, no local rule providing for the granting of motions not timely opposed is mentioned in Udom. Second, in Udom the lawyer did all he could to get a few more days to prepare his amended complaint, and did nothing consistent with intentional abandonment of the litigation at the time the deadline ran, but in the case at bar, the lawyer watched the deadline go by and intentionally did nothing. We noted in Udom that the lawyer raised his theory before the deadline for amending his complaint, asked opposing counsel for a stipulation for a few days' extension though "[c]uriously, this basic courtesy ... was declined," id. at 1238, moved before the deadline for an extension, and attempted to file the amended complaint a few days later. Udom should be understood as a case about reasonable extensions of time. Stipulations to reasonable extensions are what enable lawyers to have babies, attend graduations, and otherwise have lives outside their offices. The case at bar, by contrast, raises only the issue of whether a lawyer can choose to ignore with impunity a stipulated and ordered deadline to oppose a motion or file an amended complaint.
 
 
 37
 The district court had the power under Rule 16 to control its docket by providing a cutoff date for pleadings amendments, and did so pursuant to the parties' stipulation. It also had the power to provide for granting motions not timely opposed, under Rule 78, its local rule, and Warren. It properly granted the motion to dismiss pursuant to this authority. Not only was everything proper, it was also routine and fair, so routine that it would be a great surprise to most lawyers and judges to discover that we construe Rule 15(a) so broadly as to strip the district court of its powers under Rule 16(b) and Rule 78.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3