326 F.3d 1088
 Lorraine KIRTLEY, Plaintiff-Appellant,
v.
Carol H. RAINEY, and the marital community; Roy Rainey, and the marital community; Thomas Adams, and the marital community; Jane Doe Adams, and the marital community; Genney Opinion Baker, and the marital community; Jason Baker, and the marital community; Diane Frost, a single woman, Defendants-Appellees.
 No. 01-35740.
 United States Court of Appeals, Ninth Circuit.
 Submitted August 7, 2002.*
 Submission Withdrawn October 2, 2002.
 Resubmitted March 6, 2003.
 Filed April 22, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Marilyn R. Gunther, Kent, Washington, for the appellant.
 Clayton E. Longacre, Longacre and Adams Law Office, Port Orchard, Washington, for appellee P. Thomas Adams.
 Kathleen Q. Lappi, The Rife Law Firm, Silverdale, Washington, for appellees Genney and Jason Baker.
 Gregory B. Curwen and Joseph A. Hamell, Gierke, Curwen, Metzler & Erie, P.S., Tacoma, Washington, for appellee Diane Frost.
 Appeal from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-00-05765-FDB.
 Before NOONAN, HAWKINS, and GOULD, Circuit Judges.
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 We must decide whether a state-appointed guardian ad litem ("guardian") acts under color of state law for purposes of 42 U.S.C. § 1983. Applying the several fact-sensitive tests recognized by this Court, we conclude that the Guardian's function does not qualify as state action and therefore affirm the district court.
 
 BACKGROUND
 
 2
 This appeal arises from events related to a 1998 child custody modification action in Kistap County, Washington Superior Court. From 1993 to 1998, Lorraine Kirtley ("Kirtley") had been the primary caregiver and legal custodian of her granddaughter, Nicole Heath ("Nicole"). The state proceeding resulted in the transfer of custody of Nicole to Genney Baker, Kirtley's daughter and Nicole's mother. Kirtley responded by filing suit in federal court, raising claims under 42 U.S.C. §§ 1983 & 1985, and Washington tort law.
 
 
 3
 Kirtley's complaint alleges she was the victim of a conspiracy to deprive her of custody over her granddaughter. Kirtley named as defendants Thomas Adams (her attorney in the custody action), Diane Frost (a counselor she had hired for Nicole), Carol Rainey (the court-appointed guardian "Guardian Rainey"), Genney and Jason Baker (her daughter and son-in-law), and Thomas Stowell (counsel for Genney and Jason Baker). Kirtley alleged that during the custody proceeding, Frost called a secret meeting among the defendants to execute a plan to enter false evidence, to cast Kirtley in a false light, and to facilitate the transfer of Nicole to Genney Baker. She also alleges that her lawyer failed to represent her interests adequately, that Guardian Rainey failed to investigate Kirtley's ability to care for her granddaughter, that her daughter joined in providing false statements, and that her daughter's lawyer used the false information to secure an ex parte order to interrupt Kirtley's guardianship, all in violation of Kirtley's constitutionally protected rights.[1]
 
 
 4
 The district court ordered Kirtley to demonstrate state action by any or all of the defendants, or risk dismissal of the § 1983 claim as to all defendants. Unpersuaded by Kirtley's response that Guardian Rainey should be considered an agent acting under color of state law, the district court dismissed the § 1983 claim. The court also dismissed Kirtley's § 1985 claim and declined to exercise jurisdiction over Kirtley's remaining state law claims. On appeal, Kirtley's briefs addressed only the district court's § 1983 determination, so we consider Kirtley's § 1985 claim waived.
 
 STANDARD OF REVIEW
 
 5
 Dismissal under Rule 12(b)(6) for failure to state a claim is reviewed de novo. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir.2001).
 
 ANALYSIS
 
 6
 A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). While generally not applicable to private parties, a § 1983 action can lie against a private party when "he is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). This is precisely the type of conspiracy alleged by Kirtley in the present action.
 
 
 7
 The question we face is whether Guardian Rainey was acting under color of state law. Kirtley argues that a guardian essentially functions as an officer of the court and therefore acts under color of state law. "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir.1999) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).
 
 
 8
 "What is fairly attributable[as state action] is a matter of normative judgment, and the criteria lack rigid simplicity.... [N]o one fact can function as a necessary condition across the board ... nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). Nonetheless, we recognize at least four different criteria, or tests, used to identify state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." Sutton, 192 F.3d at 835-36; see also Lee v. Katz, 276 F.3d 550, 554 (9th Cir.2002). Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists. Lee, 276 F.3d at 554.
 
 
 9
 We turn first to the role of a guardian under Washington state law. The statutes in effect at the time of the custody action at issue provide in relevant part:
 
 
 10
 (1)(a) The court may appoint a guardian ad litem to represent the interests of a minor or dependent child when the court believes the appointment of a guardian ad litem is necessary to protect the best interests of the child in any proceeding under this chapter....
 
 
 11
 (b) Unless otherwise ordered, the guardian ad litem's role is to investigate and report factual information to the court concerning parenting arrangements for the child, and to represent the child's best interests.... The court may require the guardian ad litem to provide periodic reports to the parties regarding the status of his or her investigation
 
 
 12
 . . . .
 
 
 13
 Wash. Rev.Code § 26.12.175 (1996). Our task is to examine the guardian's role in light of the tests previously applied by this Court.
 
 A. Public Function
 
 14
 "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." Lee, 276 F.3d at 554-55 (internal quotation marks omitted). The public function test is satisfied only on a showing that the function at issue is "both traditionally and exclusively governmental." Id. at 555. The guardian seems to occupy two primary roles under the statutory scheme: an advocate for the best interests of the child subject to the custody dispute, and an independent source of information for the court regarding the circumstances of the custody dispute. Neither function has ever been held to be a traditional or exclusive governmental function under this test, which appears to have no application here.
 
 B. Joint Action
 
 15
 Under the joint action test, we consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir.1995) (internal citations, brackets and quotation marks omitted). Although a guardian is appointed, compensated, subject to qualification, and regulated by the state, the above-quoted statute clearly indicates that the intended benefits of the guardian "flow directly to" the child, in whose interests the guardian must act. See id. (no joint action exists where "benefits of [state-law designated loan guarantor] flow directly to students, not to the state itself," even while "in a broad sense" conferring public benefits). As the district court recognized, and as appellees argue, the role of the guardian as an advocate is analogous to the role of a court-appointed public defender.
 
 
 16
 The Supreme Court has held that a public defender does not act under color of state law when performing pure advocacy functions, Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), and the Tenth Circuit has relied on the analogy between public defenders and guardians to hold explicitly that guardians do not act under color of state law for § 1983 purposes. Meeker v. Kercher, 782 F.2d 153, 155 (10th Cir.1986) (no obligation or duty to the state, but undivided loyalty to the minor). Meeker goes on to observe that even where the judgment of the guardian exercised on behalf of the minor corresponds with the state interest in child care, it is the independence of the guardian that insulates the role from § 1983 liability. Id.[2] The significance of this independence is underscored by the difficulty we have in seeing how any unconstitutional act by the guardian would possibly provide benefits to the state. Taken together, they indicate that the joint action test is not satisfied with respect to the guardian's functions as an advocate.
 
 
 17
 Of course, the guardian is not simply empowered under the Washington statute to represent the best interests of the child, but also to "investigate and report factual information to the court concerning parenting arrangements for the child." Wash. Rev.Code § 26.12.175(1)(b). Kirtley's briefs seize on this aspect of the guardian's role to argue that the guardian is simply an extension of the court. While it is true that the role of the judge appointing the guardian is that of factfinder, and that the guardian assists in factfinding through acts of investigation and reporting, Kirtley does not demonstrate that the guardian fails to perform independently. Recent amendments to the guardian appointment statute make explicit what was earlier implied: Guardian investigations are to be conducted independently and the court will merely use the information as one data point among many in rendering custody decisions.[3] See Wash. Rev.Code § 26.12.175(1)(b). An additional amendment prohibiting ex parte communication between guardians and the court, Wash. Rev.Code § 26.12.187 (2000), further shows that the statutory scheme intends to create a position independent of judicial influence or power, even if a guardian may in a general sense serve the judicial function of right decisionmaking. See Parks, 51 F.3d at 1486.
 
 C. Compulsion Test
 
 18
 The compulsion test considers whether the coercive influence or "significant encouragement" of the state effectively converts a private action into a government action. See generally Sutton, 192 F.3d at 836-37 (canvassing applications of the compulsion test involving the actions of private parties required under law or regulation). Again, the guardian functions independently of the court, exercising advocacy obligations that are, by law, to the child, not the court. Thus it makes no sense to say that the guardian is under such government compulsion that she acts on behalf of the state. And again, although the guardian's investigatory and reporting function is performed pursuant to law, the amendments discussed above clarify that this role is independent of court edict or oversight. In this respect, the guardian, although a reporter of facts, functions as a witness.
 
 D. Nexus
 
 19
 Arguably the most vague of the four approaches, the nexus test asks whether "there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." Brentwood, 531 U.S. at 295, 121 S.Ct. 924 (internal quotations omitted). Again, there are significant links between the position of the guardian and the government. As Kirtley observes, the guardian is appointed by a state actor, is paid by the state, and is subject to regulation by state law. But there the nexus ends. Where the guardian reports to the court, she reports as an independent investigator. Where the guardian acts as an advocate of the child, she occupies a role distinct from the court before which she advocates. Although it is conceivable that a more expansive type of guardianship role could satisfy the nexus test, see Thomas S. v. Morrow, 781 F.2d 367, 377-78 (4th Cir.1986) (state-appointed guardian was state actor where guardian had custody of ward and guardian acted together with or obtained significant aid from state officials), the actions of the guardian at issue here do not appear to be "fairly attributable to the state." Sutton, 192 F.3d at 836.[4]
 
 E. Countervailing Factors
 
 20
 The Supreme Court, even in its most recent pronouncement on state action, does not clarify whether and when one test or another should be applied to a particular fact situation. Brentwood challenges lower courts by stating that even facts that, standing alone, would require a finding of state action "may be outweighed in the name of some value at odds with finding public accountability in the circumstances." Brentwood, 531 U.S. at 303, 121 S.Ct. 924. As an example of one such countervailing value, the Court cites to Polk County, in which it took exception from the general rule that full-time public employment is conclusive of state action in the case of public defenders. "[W]hen the employee is doing a defense lawyer's primary job[,] then the public defender does `not act on behalf of the State; he is the State's adversary.'" Id. (quoting Polk County, 454 U.S. at 323 n. 13, 102 S.Ct. 445).
 
 
 21
 Obviously, a guardian is not the adversary of the state in the same respect that a public defender is an adversary of the criminal prosecutor. However, Brentwood's citation to Polk County in recognition of countervailing values is relevant here not because the public defender is an adversary of the state, but because, like the guardian, the defender is independent of the state.[5]
 
 
 22
 Although we have recognized several tests to determine where state action lies, the central question remains whether "the alleged infringement of federal rights [is] fairly attributable to the government." Sutton, 192 F.3d at 835 (internal quotations omitted). Even if Guardian Rainey committed the fraudulent or conspiratorial acts of which she is accused, the actions simply are not fairly attributable to the state.
 
 CONCLUSION
 
 23
 Under the criteria recognized in this court's recent decisions in Lee and Sutton, the function of the guardian, as articulated in the Washington statute, does not satisfy the state action test. In so concluding, we join our sister circuit. See Meeker, 782 F.2d at 155.
 
 
 24
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a)(2)
 
 
 [1]
 Kirtley alleged that Guardian Rainey, in conjunction with the other defendants, acted to deprive Kirtley of her due process rights and fundamental right to family integrity under the Constitution. The posture of this case presents no need for us to address whether such rights were deprived
 
 
 [2]
 See also Snyder v. Talbot, 836 F.Supp. 19, 24 (D.Me.1993) (guardian appointed under Maine law, which allowed appointment for the limited purpose of representing the interest of a minor, not a state actor where guardian exercised independent judgment and "did not exercise custodial or supervisory rights over the child or engage in any other arrangements that could have been viewed as carrying out the state's mandate"); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (court appointed attorney for a minor in delinquency proceedings, who had earlier acted as minor's guardian in abuse and neglect proceedings, does not act under color of state law).
 
 
 [3]
 The revised statute reads:
 Unless otherwise ordered, the guardian ad litem's role is to investigate and report factual information to the court concerning parenting arrangements for the child, and to represent the child's best interests. Guardians ad litem and investigators under this title may make recommendations based upon an independent investigation regarding the best interests of the child, which the court may consider and weigh in conjunction with the recommendations of all of the parties. If a child expresses a preference regarding the parenting plan, the guardian ad litem shall report the preferences to the court, together with the facts relative to whether any preferences are being expressed voluntarily and the degree of the child's understanding. The court may require the guardian ad litem to provide periodic reports to the parties regarding the status of his or her investigation. The guardian ad litem shall file his or her report at least sixty days prior to trial.
 (Emphasis added).
 
 
 [4]
 Kirtley attempts to frame this nexus analysis with reference to whether a guardian should enjoy judicial immunity, inviting the inference that immunity signals state action. Appellee and the court below correctly observe that the issues are legally distinct. The analysis relevant to this case is whether the guardian's role in this case constituted state action under the tests of this circuit, not whether the guardian enjoys quasi-judicial immunity under Washington law. At best, the absence or presence of immunity is a factor to be considered in applying the relevant state action tests
 
 
 [5]
 We note that much of our discussion focuses on the statutory definition of a guardian. The Supreme Court inBrentwood did recognize that characterizations in statutory law, or "the failure of the law to acknowledge an entity's inseparability from recognized government officials or agencies," should not reflexively lead to a finding of no state action where the facts suggest otherwise. Brentwood, 531 U.S. at 296, 121 S.Ct. 924. Here, Kirtley has done little, either in her complaint or in appellate briefing, to provide factual details regarding the guardian's function in this particular case — hence, our focus on the statutory definition of a guardian. We leave for another day consideration of whether any particular facts can be demonstrated that would fit the Brentwood exception.