**Moussa SAFOUANE;  et al.,**
**Plaintiffs–Appellants,**

v.

**Deborah FLECK;  et al., Defendants–**
**Appellees.**

**No. 05–35394.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2006.

Filed March 30, 2007.

As Amended on Denial of Rehearing and
Rehearing En Banc July 26, 2007.

Rymer, Circuit Judge, filed a dissenting opinion.

Marilyn R. Gunther, Esq., Kent, WA, for Plaintiffs–Appellants.

Aziz Safouane, Kent, WA, pro se.

Sarah Safouane, Kent, WA, pro se.

John W. Cobb, Esq., King County Prosecuting Attorney's Office Civil Division/Tort Section, Seattle, WA, Robert C. Hargreaves, Office of the Washington Attorney General, Olympia, WA, William G. Clark, Clark Wolf PS, Philip J. Welchman, Esq., Freise & Welchman, Stephen P. Larson, Esq., Stafford Frey Cooper, Michael F. Madden, Esq., Bennett Bigelow & Leedom, P.S., Pamela M. Andrews, Esq., Johnson Christie Andrews & Skinner, PS, David P. Hansen, Aiken, St. Louis & Siljeg, P.S., Seattle, WA, for Defendants–Appellees.

Before: ALARCÓN, RYMER, and BERZON, Circuit Judges.

## MEMORANDUM *

Acting *pro se,* Aziz and Sarah Safouane (the "Safouanes") filed this action on April 10, 2000, alleging claims under 42 U.S.C. §§ 1983 and 1985(3), and supplemental state law claims against over one hundred defendants. They joined as plaintiffs their seven minor children and three paternal relatives. The district court concluded that it lacked subject matter jurisdiction as to some of the claims, the children and paternal relatives lacked standing, the Safouanes failed to state a claim as to other causes of action, no genuine issue of material fact remained in dispute as to some of the claims, and the Safouanes failed to prosecute their final remaining claim. We affirm the district court's disposition of most of the federal claims but vacate the dismissal of the § 1983 claims arising out of the abuse by the foster parents to the extent they state a claim that the Safouanes were deprived of their constitutionally protected liberty interest in the companionship and society of their children. We also vacate the order dismissing the supplemental state law claim of malicious prosecution. Because the parties are familiar with the facts, we have not summarized them in this non-published memorandum disposition.

## I

## A

The Plaintiffs–Appellants assert that the district court's dismissal of the children and paternal relatives for lack of standing is reversible error. They argue that the children and relatives are "real parties in interest." The Plaintiffs–Appellants also assert that the district court erred when it declined to appoint a guardian *ad litem* or "next friend" for the minor children.

We review *de novo* issues involving standing. *Buono v. Norton,* 371 F.3d 543, 546 (9th Cir.2004). We review for abuse of discretion a district court's decision regarding the appointment of a guardian *ad litem* or "next friend." *United States v. 30.64 Acres of Land,* 795 F.2d 796, 804 (9th Cir.1986).

■ A real party in interest is one "to whom the relevant substantive law grants a cause of action." *U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1038 (9th Cir.1986). The Second Amended Complaint sets forth no specific factual allegations regarding injury to the paternal relatives, other than an allegation that they were deprived of contact with the minor children. But the paternal relatives have no right to such contact. *See Mullins v. Oregon,* 57 F.3d 789 (9th Cir.1995) (holding that non-custodial grandparents have no liberty interest, fundamental or otherwise, in the adoption of their grandchild). The complaint thus states no cause of action on their part, and they were properly dismissed.

■ Nor did the district court err in denying the motion for appointment of a next friend for the children. The record does not indicate that Plaintiffs–Appellants requested that anyone other than the paternal relatives or the Safouanes be appointed as "next friend." On March 13, 2001, the Safouanes and Ms. Gunther, on behalf of the Safouanes' paternal relatives, filed a motion requesting an order from the district court appointing "Aziz Safouane and Sarah Safouane, and/or Zahra Touri, Rabia Safouane, and Hassan Sa-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

fouane as next friends in this action for the minor children."

The district court concluded that neither the Safouanes nor the paternal relatives had established that they were truly dedicated to the best interests of the children or that they had a significant relationship with them. As the Safouanes' allegations in this action stemmed from the termination of their parental rights by the Washington State court system, and the Safouanes failed to allege that the paternal relatives, who live in Morocco, had any contacts with the children, the district court did not abuse its discretion by denying the Safouanes' request to appoint themselves or the paternal relatives as "next friend" to the minor children.

■ Without appropriate representation, the minor children lacked standing in this action. Hence, the district court's dismissal on jurisdictional grounds of the children and paternal relatives as plaintiffs was proper. Although the Safouanes object that the dismissal will wrongly foreclose their children's right to recover for any of the mistreatment alleged in the complaint, our resolution does not have such preclusive effect, because the children were for procedural reasons never proper parties to this suit. Given our conclusion on the next friend issue, we need not and do not approve the district court's holding that the children lack standing on their own behalf to challenge the actions at issue in this case.

**B**

The Safouanes argue that the district court erred when it concluded that, under the *Rooker–Feldman* doctrine, it did not have jurisdiction to entertain the Safouanes' claims against certain defendants. The Safouanes maintain that the *Rooker–Feldman* doctrine should not apply because the state court proceedings are a legal nullity and void. We review a *Rooker–Feldman* dismissal *de novo. Maldonado v. Harris,* 370 F.3d 945, 949 (9th Cir. 2004).

■ "Under the '*Rooker–Feldman* doctrine,' review of state court decisions may only be conducted in the United States Supreme Court." *Partington v. Gedan,* 961 F.2d 852, 864 (9th Cir.1992). The Safouanes seek, *inter alia,* a declaratory judgment that all orders and judgments relating to them in the state court system are void, and request that the federal court take supervisory control of state proceedings. Any such relief, however, would be inextricably intertwined with the results of the state court proceedings and would require the district court to review state court rulings. Under the *Rooker–Feldman* doctrine, federal courts lack jurisdiction to determine whether the proceedings regarding parental rights with respect to five of the Safouanes' surviving children were valid, because those proceedings were concluded before the filing of this action.

**C**

■ Although the district court did not dismiss any claims under the *Younger* abstention doctrine, "[w]e may do so for the first time on appeal because *Younger* abstention may be raised sua sponte at any point in the appellate process." *H.C. ex rel. Gordon v. Koppel,* 203 F.3d 610, 613 (9th Cir.2000). There does not seem to be a genuine dispute between the parties that at the time this action was filed, proceedings regarding two of the minor children were pending in the state court, *In re Dependency of A.S.,* 101 Wash.App. 60, 6 P.3d 11 (2000); Order of Dependency, Cause No. 99–7–01849–2 KNT, entered August 19, 1999, or that the Safouanes had the opportunity to raise their claims in

those proceedings. The claims seeking injunctive or declaratory relief related to those proceedings were subject to dismissal pursuant to *Younger* abstention. *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

## II

■ The Safouanes previously unsuccessfully litigated some of their claims in state court. We may apply collateral estoppel even if not raised below. *See McClain v. Apodaca,* 793 F.2d 1031, 1032–33 & n. 1 (9th Cir.1986). Despite the Safouanes' assertions that all of their current claims are different from those pursued in the state cases, the records of those proceedings show that claims asserting (1) the facial unconstitutionality of RCW 13.34.030(4)(c) and the unconstitutionality of RCW 13.34.060 as applied to a shelter care order concerning Aisha Safouane; (2) the disqualification of Judges Pechman and McCullough due to a lack of an appearance of fairness; (3) the unconstitutionality under the First and Fifth Amendments of requirements that the Safouanes undergo psychological exams, visit their children in foster care, or take actions inconsistent with their belief in their own innocence in order to regain custody; (4) the legality and constitutionality of the writ authorizing officers to seize Aisha Safouane were all alleged and decided against the Safouanes on the merits in state court actions. *In re Dependency of M.I.S.,* 87 Wash.App. 1005, 1997 WL 435887 at *8 (1997); *In re Welfare of M.I.S.,* 95 Wash.App. 1049, 1999 WL 325442 at *4, 13 (1999); *In re Dependency of A.S.,* 100 Wash.App. 1038, 2000 WL 548159 at *4–10 (2000). Thus, the Safouanes are collaterally estopped from relitigating these claims in this action.

## III

The Safouanes argue that the district court erred in dismissing as time-barred all of their claims involving events that occurred before April 10, 1997. The standard of review applicable to a district court's dismissal of a claim on statute of limitations grounds is *de novo. Jones v. Blanas,* 393 F.3d 918, 926 (9th Cir.2004).

Certain of the Safouanes' claims arising from events that occurred before April 10, 1997, were properly dismissed as time-barred—namely, claims against (1) the City of Seattle and Seattle Police Officers # 6–10, stemming from events that occurred on February 20, 1996; (2) King County and its Police Officers # 1–5, stemming from their actions on October 11, 1995; and (3) Ruth Wantanabe, regarding the therapy she provided Moussa, Nadia and Morocco while they were in foster care in 1994. The Safouanes allege no facts entitling them to equitable tolling on these claims.

## IV

The district court dismissed numerous civil rights claims under 42 U.S.C. § 1983 against various defendants for failure to state a claim.

A dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo. Decker v. Advantage Fund, Ltd.,* 362 F.3d 593, 595–96 (9th Cir.2004).

To seek relief under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived the plaintiff of his or her constitutional or federal statutory rights. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). A *prima facie* case under § 1983 requires allegations showing how individually named defendants caused or personally participated in causing the

alleged harm. *Arnold v. Int'l Bus. Machines Corp.,* 637 F.2d 1350, 1355 (9th Cir.1981). The plaintiff must set forth specific facts establishing the basis for each defendant's liability. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980).

### A

■ The Safouanes asserted several claims against health care workers and a school principal, based on the care they provided the minor children, the failure of the providers to obtain the Safouanes' consent, or failure to provide the Safouanes information or records regarding the care of their children.

The Safouanes cite no authority for the proposition that parents who have been lawfully deprived of the custody of their children nevertheless retain federally-protected rights to receive such information or control such care. In addition, claims against the principal and therapist are time-barred. We therefore affirm the district court's dismissal of these claims for failure to state a cause of action.

### B

■ The Safouanes assert that the district court erred when it dismissed for failure to state a claim their vicarious liability claims against several Washington executive officers and the supervisor of the Guardian *ad Litem*/Dependency CASA program.

Liability under § 1983 cannot be established solely on the basis of *respondeat superior. Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*

*v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982).

To the extent the Safouanes make any allegations of participation by the state executives or the guardian *ad litem* supervisor, they are vague or conclusory. Dismissal was therefore proper.

### C

■ The Safouanes contend that the district court erred when it dismissed on sovereign immunity grounds the State of Washington and state executive officers that were sued in their official capacities. Immunity under the Eleventh Amendment is reviewed *de novo. Yakama Indian Nation v. State of Wash. Dep't of Revenue,* 176 F.3d 1241, 1245 (9th Cir.1999).

Claims for damages against state officers for actions performed in their official capacities are barred under the Eleventh Amendment, unless the state waives its immunity. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("neither a state nor its officials acting in their official capacities are 'persons' under § 1983."). Washington state courts have held that the State of Washington has not waived its Eleventh Amendment immunity for purposes of actions under § 1983. *Rains v. State,* 100 Wash.2d 660, 674 P.2d 165, 170–71 (1983).

The Safouanes' § 1983 claims against the State of Washington and their claims for money damages against certain executive officers sued in their official capacities are barred, as are the Safouanes' state law claims seeking money damages.

The Safouanes assert that the district court erred in relation to their injunctive relief claims because, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar claims for prospective injunctive relief. The Supreme Court has held that the Eleventh Amendment does not prohibit the issuance of an injunction against a state official, *Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908), so long as the relief is prospective only, *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Safouanes appear to have also sought injunctive relief against the relevant state executives. The Safouanes, however, failed to state a claim against these executives given that there is no underlying violation of federal law for the reasons stated elsewhere in this disposition.

### D

■ The Safouanes alleged claims against defendant King County based on its employment and supervision of guardians *ad litem*, county judges, court commissioners, county police, and county correctional officers. The district court dismissed these claims pursuant to Rule 12(b)(6).

To establish municipal liability under § 1983, a plaintiff must demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local government unit. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Municipal liability may not be based upon *respondeat superior* or on random acts or single instances of misconduct. *Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir.1995). In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986).

In the instant case, the municipal liability claims asserted against King County stem from the conduct of King County employees. Even considering this case under the more flexible standard established in *Shah*, the Safouanes' claims fail to state a cause of action under *Monell*, because (with the exception of the time-barred claim concerning police action in 1995) they fail to make even a "bare allegation" that these acts "conformed to official policy, custom, or practice." *Id.*

### V

The Safouanes argue that the district court erred in dismissing various defendants on immunity grounds.

### A

■ The district court properly dismissed the retrospective claims against all of the judicial officers. Judges are absolutely immune from suit for retrospective relief in civil actions for conduct undertaken as a judicial officer, *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), unless the judge acts in the clear absence of all jurisdiction (as opposed to merely acting in excess of her jurisdiction), *Stump v. Sparkman*, 435 U.S. 349, 356–57 & n. 7, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The retrospective claims against the judicial officers were properly dismissed on grounds of absolute immunity, while the prospective claims were properly dismissed under *Rooker–Feldman* and *Younger* abstention as already explained.

762

## B

■ Witnesses in judicial proceedings are absolutely immune from lawsuits based upon their testimony. *Briscoe v. LaHue,* 460 U.S. 325, 331–32, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The mere allegation of a conspiracy to affect the outcome is insufficient to defeat immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (involving prosecutorial immunity). The district court correctly determined that claims against a psychologist and a pediatrician pertained only to their expert testimony, and properly dismissed on grounds of witness immunity.

## C

Absolute immunity attaches to prosecutors and to other officers standing in their shoes for performing the traditional function of prosecutors: "initiating a prosecution and ... presenting the State's case." *Miller v. Gammie,* 335 F.3d 889, 897 (9th Cir.2003) (en banc). An allegation of conspiracy to affect the outcome does not defeat the immunity. *Imbler,* 424 U.S. 409, 96 S.Ct. 984. Immunity extends even to suppressing information at trial, *id.,* and to a prosecutor's "decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction." *Broam v. Bogan,* 320 F.3d 1023, 1030 (9th Cir.2003).

The district court relied in part on this court's decision in *Babcock v. Tyler,* 884 F.2d 497 (9th Cir.1989), in dismissing claims against the social worker defendants on grounds of absolute immunity. But in *Miller,* we held that *Babcock* had been overruled by subsequent Supreme Court decisions to the extent it granted absolute prosecutorial immunity to social workers for duties beyond which prosecutors were rendered immune at common law. 335 F.3d at 897.

■ Except for the claims related to the children's abuse in foster care, the district court properly dismissed all claims against the assistant attorneys general, the guardian *ad litem* case workers, and the appointed counsel. The Safouanes argue that prosecutorial immunity does not attach because the alleged conduct occurred outside the advocacy context. But the vast majority of the allegations concerning these defendants involve actions taken during or to initiate proceedings, and were properly dismissed for prosecutorial immunity. The remaining claims are time-barred, depend on rights for which the Safouanes cite no authority or which the Safouanes are collaterally estopped from asserting, or involve actions protected by witness immunity.

■ Except for the claims related to the children's abuse in foster care, the majority of the claims against the social worker defendants were properly dismissed on grounds of prosecutorial immunity because they involve actions taken to initiate proceedings or as an advocate therein. The remainder, with one exception, were properly dismissed because they were time-barred, were protected by absolute witness immunity, or depend on rights for which the Safouanes cite no authority or which the Safouanes are collaterally estopped from asserting. The district court improperly dismissed a claim against social worker Wallace for participating in an allegedly unlawful search and seizure, which it declined to dismiss as to the police officers and detective who also participated. Wallace was no more absolutely immune in this activity than the police. But since we hold that the police and the detective did not violate any of the Safouanes' constitutional rights, *see infra,* and because it was not alleged that the social worker's actions were different from those

of the police, Wallace also did not violate the Safouanes' rights.

## VI

### A

■ The Safouanes allege that King County police officers broke into their apartment with excessive force, without pursuing reasonable avenues of investigation, and without a search warrant or valid court order to seize Aisha Safouane from their custody. The Safouanes argue that the district court erred when it granted summary judgment in favor of Defendants–Appellees on this claim.

The Safouanes are collaterally estopped from asserting that the police acted pursuant to an invalid court order. *See supra.* They therefore have no claim as to the seizure of Aisha Safouane.

The Safouanes contend that the police officers did not have probable cause to arrest Sarah Safouane. The Order to Issue the Writ authorized the officers to arrest any individual who stood in the way or obstructed their attempts to obtain the immediate custody of Aisha Safouane. The record reflects, and the parties do not dispute, that the police officers provided the Safouanes with a copy of the writ, repeatedly told the parents that they were "taking the baby," and warned Sarah Safouane that she would be arrested for obstruction if she failed to release the baby to them, and that Sarah refused to release the baby. Therefore, there is no genuine issue of material fact in dispute concerning whether the police officers had probable cause to arrest Sarah Safouane for obstruction. Summary judgment on this claim in favor of the police officers was proper.

■ The Safouanes also claim that the police officers used excessive force against Sarah Safouane when they seized Aisha and then "brutally slammed" Sarah against the wall and handcuffed her.

Under the Fourth Amendment, officers may only use force that is "objectively reasonable" under the circumstances, meaning that the government interests at stake outweigh the nature and quality of the intrusion on the individual's countervailing Fourth Amendment interests. *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir.2001). Reasonableness may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was "objectively reasonable" under the circumstances. *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994).

Viewing the facts favorably to the Safouanes, we conclude that the district court properly determined that under the totality of the circumstances the government's strong interests in protecting the child outweighed the intrusion on Sarah Safouane's Fourth Amendment interests. Nor have the Safouanes adduced sufficient evidence in support of their allegation that the officers were motivated by religious animus or a desire to punish them for their speech. The district court did not err in granting summary judgment on this claim.

### B

■ Sarah Safouane alleged that King County correctional officers violated her constitutional right to the free exercise of her religion when she was not allowed to wear her hij ab in jail.

To establish a free exercise claim, an inmate must demonstrate that correctional officers "burdened the practice of [her] religion, by preventing [her] from engaging in conduct mandated by [her] faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio,* 125 F.3d 732, 736 (9th

Cir.1997); *see also Standing Deer v. Carlson,* 831 F.2d 1525, 1531 (9th Cir.1987) (holding that a prison regulation banning all headgear, including religious headbands, did not unconstitutionally burden Native American religious freedoms because regulation was logically related to legitimate penological interests). Sarah was not a prisoner but a pretrial detainee. But we have applied the same standards for detainees as for prisoners in considering First Amendment claims, *see Valdez v. Rosenbaum,* 302 F.3d 1039, 1047–49 (9th Cir.2002), since many of the same interests and principles apply, *see Bell v. Wolfish,* 441 U.S. 520, 545–48 & n. 29, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The defendants introduced at summary judgment a declaration from a jail official attesting to the penological interests served by its ban on wearing head coverings in the jail, including a hijab. The Safouanes, on the other hand, presented *no* evidence challenging those purported interests, *nor* did they indicate how their only proffered alternative arrangement—having Sarah Safouane handled only by female prison guards—had any relevance to the hijab policy. On this record, therefore, the Safouanes' claim fails because the state does not have to present evidence to support its proffered penological interest "when the inmate does not present enough evidence to refute a common-sense connection between a prison regulation and the objective that government's counsel argues the policy was designed to further," *Frost v. Symington,* 197 F.3d 348, 357 (9th Cir. 1999), and the inmate must "point[ ] to an obvious, easy alternative that *fully accommodates* their rights at *de minimis* cost to penolgoical interests," *Standing Deer,* 831 F.2d at 1529 (emphasis added). The district court did not err in granting summary judgment on this claim.

## C

Sarah Safouane also alleged that the King County correctional officers harassed and mistreated her because of her religion. To allege a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must demonstrate that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir.2001). The record is devoid of any evidence on this claim. Summary judgment was proper.

## VII

The Safouanes allege that the district court erred when it dismissed each of the Safouanes' § 1985 conspiracy claims. Because these claims were premised on the same facts underlying the § 1983 claims, they necessarily fell when dismissal and summary judgment were granted on the § 1983 claims. *See Caldeira v. County of Kauai,* 866 F.2d 1175, 1182 (9th Cir.1989).

## VIII

The Safouanes' Second Amended Complaint alleges that on April 28 and 29, 1997, King County correctional officers harassed and mistreated Aziz Safouane by forcing him to wear jail clothes for felony inmates, using excessive force against him, and putting him in isolation with no access to showers or phone. The Safouanes challenge the district court's *sua sponte* dismissal of this claim, alleging that they were never served with the order to show cause and that, in any event, dismissal is too harsh a sanction because it was the court's failure to issue a case scheduling order that caused them to not pursue this case further.

We review for abuse of discretion a district court's *sua sponte* dismissal of an action for failure to prosecute. *Oliva v. Sullivan*, 958 F.2d 272, 274 (9th Cir.1992). "District courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of the discretion." *Id.* at 273. In exercising its discretion to dismiss, a court should consider: (1) the public's interest in expeditious resolution of cases; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic alternatives. *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir.1999).

On March 8, 2005, the district court issued an order to show cause why the case should not be dismissed for failure to prosecute. The order specifically warned the parties that the case would be dismissed in the absence of a timely response. At that point, the action had been pending in the district court for almost five years, and more than nine months had passed since the Safouanes' appeal had been dismissed. The Safouanes did not file a response to the district court's show cause order.

The district court did not abuse its discretion in dismissing the Safouanes' remaining claim for failure to prosecute.

## IX

■ The Safouanes allege that Sarah Safouane was maliciously prosecuted for the crime of Obstructing a Law Enforcement Officer under RCW 9A.76.020. The district court granted summary judgment because lack of probable cause, an essential element of a malicious prosecution cause of action, was not supported by the evidence. The district court noted that the undisputed evidence reflected that the

King County police officers had probable cause to arrest Sarah Safouane for obstruction of their efforts to execute the writ of habeas corpus authorizing the immediate seizure of Aisha Safouane. The district court concluded that this evidence established sufficient probable cause for Sarah Safouane's subsequent prosecution for Obstructing a Law Enforcement Officer. The district court erred in granting summary judgment as to the state malicious prosecution cause of action.

Under Washington case law, "[a] prima facie case of want of probable cause is established by proof that the criminal proceedings were dismissed or terminated in favor of the party bringing the malicious prosecution action." *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wash.2d 485, 125 P.2d 681, 688 (1942). However, a defendant may rebut such a *prima facie* case, and prove probable cause as a matter of law, by offering unrefuted evidence that before instituting criminal proceedings, he or she made to the prosecutor a full and fair disclosure, in good faith, of all material facts known to him or her, and that the prosecutor thereupon filed a charge. *Id.*

The criminal trial against Sarah Safouane on the obstruction charge began in March 1998 and resulted in a hung jury. The charge against Sarah Safouane was subsequently dismissed. In this matter, the district court failed to consider or apply *Peasley*. Thus, the district court erred in concluding that the King County police officers had demonstrated that they had probable cause to obtain the prosecution of Sarah Safouane under Washington law.

■ Malicious prosecution claims under § 1983, however, operate on the opposite presumption that the prosecutor exercised independent judgment regarding probable cause, thereby immunizing the investigating officers, unless the plaintiff

can rebut that presumption through evidence other than her own account of the incident. *See Newman v. County of Orange,* 457 F.3d 991, 993–96 (9th Cir. 2006). The Safouanes failed to adduce such evidence, and summary judgment was therefore proper for the § 1983 claim.

## X

In their Second Amended Complaint, the Safouanes alleged that they were "deprived of the care, custody, and companionship of their children[.]" We construe liberally the pleadings of pro se litigants. *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir.1987). We have held that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Kelson v. City of Springfield,* 767 F.2d 651, 655 (9th Cir. 1985); *see Smith v. City of Fontana,* 818 F.2d 1411, 1418 n. 9 (9th Cir.1987) (holding that "*Kelson's* determination that parents have a constitutionally protected liberty interest in their continued association with their children remains good law."). Construing the complaint liberally, it would appear that the Safouanes were attempting to rely on a protected liberty interest in their § 1983 claims against the foster parents.

The Safouanes argue that the district court erred in dismissing their § 1983 claims against the foster parents under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the foster parents were not state actors. The district court concluded, on the basis of *DeWater v. State,* 130 Wash.2d 128, 921 P.2d 1059 (1996), that the foster parents were not state actors because they were not employees of the state of Washington. *DeWater* did not involve a § 1983 claim. Instead, the court in *DeWater* concluded that "a foster parent is not an 'employee' of the State for purposes of the law against

discrimination, RCW 49.60[.]" 921 P.2d at 1060.

The district court's reliance on *Mabe v. San Bernardino County, Dep't of Public Social Services,* 237 F.3d 1101 (9th Cir. 2001), is also misplaced. That matter involved a motion for summary judgment, not a motion to dismiss under Rule 12(b)(6). We held in *Mabe* that "[t]he district court's grant of summary judgment for the section 1983 claims against MD's subsequent caretakers ... is affirmed because there was no evidence presented that either of these Defendants–Appellees was acting under color of state law as agents or employees of the County." 237 F.3d at 1109 n. 3. Neither *DeWater* nor *Mabe* is dispositive of the question whether the foster parents violated the Safouanes' protected liberty interest in the companionship and society of their children under § 1983.

The district court failed to consider whether the complaint alleged sufficient facts to demonstrate that the foster parents were liable under § 1983, even if they are private parties. "While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents." *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir.2003) (internal quotation marks omitted). In determining whether a person is subject to suit under § 1983, a court must determine whether "the alleged infringement of federal rights [is] fairly attributable to the [government] [.]" *Id.* (quoting *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir.1999)). "What is fairly attributable [as state action] is a matter of normative judgment, and the criteria lack rigid simplicity.... [N]o one fact can function as a necessary condition across the board ... nor is any set of circumstances absolutely sufficient, for there may be

some countervailing reason against attributing activity to the government." *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295–96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

Because of the district court's conclusion that foster parents are not state employees under Washington state law, it failed to consider whether the Safouanes had alleged sufficient facts in their pro se pleading to demonstrate that the foster parents were acting under color of state law as the term has been interpreted in § 1983 jurisprudence. Since the district court dismissed the causes of action against the foster parents under Rule 12(b)(6), it was not called upon to consider whether there are genuine issues as to any material facts in dispute that would require that these claims be determined by a trier of fact.

We have held that "[a] pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (internal quotation marks omitted). "[W]hen dismissing a pro se complaint for failure to state a claim, district courts need draft only a few sentences explaining the deficiencies." *Id.* at 1449. We hold that the district court erred in dismissing the Safouanes' claims against the foster parents for failure to state a cause of action upon which relief can be granted. Upon remand, the district court should permit the Safouanes to attempt to amend their complaint to allege facts, if such exist, that would demonstrate that the foster parents were state actors under federal law, or private parties who willfully participated with state actors. We express no view regarding the possible merits of a motion to dismiss their claim against the foster

parents or a motion for summary judgment should one be filed upon remand by the Safouanes or the foster parents.

Under a liberal construction of the Safouanes complaint, they rely on the protected liberty interest recognized by *Kelson* to allege that Lutheran Social Services ("LSS"), which supervises foster homes in Washington State, and its employee Molly Daggett violated their constitutional rights by allowing the foster parents' abuse to continue. A similar reading of the complaint also raises that theory with regard to the assistant attorneys general, the guardian ad litem case workers, the appointed counsel, and the social worker defendants, who knew about the abuse according to the complaint but did nothing to stop it and in some cases participated in or encouraged it.

As we noted in Section IV.B, a plaintiff states a viable § 1983 claim when he makes definite allegations that a supervisor knew of constitutional violations but failed to prevent those violations. The district court dismissed the claims against LSS and Daggett on the ground that a defendant is not liable under § 1983 solely on the basis of *respondeat superior.* The Safouanes' complaint, however, specifically alleged that LSS and Daggett knew of the abuse of their children by the foster parents and failed to report it, making dismissal on this ground improper.

And as we noted in Section V.C, absolute immunity does not cover participants in the state child welfare system for duties beyond which prosecutors were rendered immune at common law. We have previously cited "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care" as examples of social workers' "decisions and recommendations that are not functionally similar to prosecutorial or judicial deci-

sions." *Miller,* 335 F.3d at 898. Accordingly, the Safouanes' allegations are not protected by absolute immunity.

■■■ We therefore vacate the dismissal of LSS and Daggett. We also vacate the grant of immunity to the assistant attorneys general, the guardian ad litem case workers, the appointed counsel, and the social worker defendants with respect to claims involving the children's abuse while in foster care. On remand, the district court should reconsider these claims in light of its resolution of the allegations that the foster parents deprived the Safouanes of their constitutional rights.[1]

## CONCLUSION

The district court did not err in dismissing each of the federal and supplemental state law claims filed against the Defendants–Appellees, except for the state law malicious prosecution claim, and the Safouanes' § 1983 claims concerning their children's mistreatment while in foster care. We vacate the order granting summary judgment on the state law malicious prosecution cause of action and the Safouanes' § 1983 claims concerning their children's mistreatment while in foster care.

Each side shall bear its own costs on appeal.

**AFFIRMED in part; VACATED and REMANDED in part.**

RYMER, Circuit Judge, dissenting in part:

I part company on Part X because the complaint alleges injury only to the children, who were properly dismissed as plaintiffs. The majority offers no explanation for how the foster parents' alleged physical abuse of the children could have deprived the Safouanes of their parental liberty interest in companionship and society with the children. None appears in the complaint, in the parties' arguments, or in our precedent. The majority nonetheless remands on the possibility that the Safouanes might be able to make some conceivable allegation or showing along these lines. I see no such possibility, and no need to remand.

*Kelson v. City of Springfield,* 767 F.2d 651, 655 (9th Cir.1985), and its relatives do not support the majority's position. While these cases recognize a constitutionally protected parent-child companionship interest that can be pursued when that interest is terminated or severed by state action, the Safouanes' interest (whatever its contours) wasn't severed or terminated by the *foster parents* because that interest was *already* terminated by the state through protective custody actions and child welfare proceedings that are now over and done with. The alleged abuse occurred *after* the state *lawfully* deprived the Safouanes of custody of the children, and state courts subsequently terminated the Safouanes' parental rights with respect to each of the children when the Safouanes refused to comply with court orders or visit the children in foster care. Thus, the abuse never affected any parental companionship interest, and evidently never will; in any event, the Safouanes lack standing to bring a claim based on potential difficulties should family reunification someday become possible. *See Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III.").

Nor does the type of "injury" to the parent-child companionship interest at is-

---

1. This court cannot affirm the district court's dismissal of the Safouanes' claims regarding the foster parents on the statute of limitations ground on this record. The parties are free to pursue this issue on remand.

sue here rise to the level of a cognizable constitutional deprivation. Previous cases all involve the *termination of parental contact* with the child by state court order, death, deportation, long-term detention of the child, or the like. None involves the situation here, where the custodial relationship between parent and child has already been legally severed. *Cf. Harry A. v. Duncan*, 351 F.Supp.2d 1060, 1068 (D.Mont.2005) ("*Kelson* and related cases do not provide constitutional protection from any state action that has the ultimate effect of disturbing the tranquility of the parent-child relationship.").

Finally, whether the surviving due process claim is procedural or substantive (the majority doesn't say), it fails either way. The complaint does not allege that the state's post-deprivation process is inadequate, *see Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and the type of potential interference in the parent-child relationship at play here does not come close to meeting the standard for a substantive due process violation announced in *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *compare Smith v. City of Fontana*, 818 F.2d 1411, 1418–19 (9th Cir.1987) (deliberate and unjustified *killing* of victim rises to the level of a substantive due process violation), *overruled on other grounds by Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1040 n. 1 (9th Cir.1999) (en banc).

Because the allegations regarding foster parent abuse do not state a claim belonging to the Safouanes, it necessarily follows that the claims relating to the various supervisors must fail as well.

I would, therefore, affirm.